**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**



JEREL SHAW,

    Plaintiff,

v.

                                    Civil Action No. 3:11cv483

ARAMARK MANAGEMENT SERVICES
LIMITED PARTNERSHIP,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Defendant's MOTION FOR SUMMARY JUDGMENT (Docket No. 26) pursuant to Fed. R. Civ. P. 56. For the reasons set forth herein, the motion will be granted.

## BACKGROUND

Jerel Shaw ("Shaw") filed a Complaint[1] with three counts (each labeled a "Cause of Action" in the Complaint) all of which are predicated on alleged discrimination against him by his employer, Aramark Management Services LP ("Aramark"), in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634. Count I alleges that Shaw was subjected to a hostile work environment and Count II alleges

---

[1] Shaw is proceeding pro se in this action. Therefore, the Court "will liberally interpret all of his filings and evidentiary proffers where possible." Martin v. Scott & Stringfellow, Inc., 643 F. Supp. 2d 770, 775 n.1 (E.D. Va. 2009) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

that he was repeatedly passed over for promotions and was suspended and fired (though reinstated shortly thereafter), both based on his age. Count III alleges that Shaw was not reinstated to his previous positions upon his return from the brief termination, and that he was repeatedly passed over for promotions, in retaliation for having filed a charge with the Equal Employment Opportunity Commission ("EEOC").

Shaw, who was born May 22, 1950, was hired by Aramark on April 15, 2008, to provide cleaning services at the Virginia Commonwealth University Health System ("VCUHS"). (Compl. ¶ 3.) He originally was assigned to work as a "project tech" on the third shift (i.e., the overnight shift). (Gregory Talley Decl. ¶ 3, Docket No. 27-1.) On or about March 8, 2009, Shaw, who was then 58 years (and 9 months) of age, applied for an open third shift supervisory position. (Compl. ¶ 9, Talley Decl. ¶ 4.) He was interviewed for that position by Andrew Lewis ("Lewis"), who used a standard Aramark "EVS Interview Form - Supervisor" to document and "score" the interview. (Id. ¶ 4.) Lewis gave Shaw a score of twenty-two points out of a possible fifty points. (Compl. Ex. C.) Another candidate for the same position, Arrington Jones ("Jones"), who was approximately fifty years of age at the time, was interviewed by Lewis on June 24, 2009; using the same standardized interview form, Lewis gave Jones a score of forty-two points. (Talley Decl. Ex. B, Docket No. 27-

2

1.) Based on Lewis's recommendation, Rodney Birth ("Birth"), Aramark's Operations Manager for the third shift, selected Jones for the position over Shaw.[2] (Andrew Lewis Decl. ¶ 5, Docket No. 27-2.) Between July and September 2009, Shaw applied for four other supervisory positions with Aramark at the VCUHS site, but all four of those requisitions were canceled. (Def.'s Mem. 7, Docket No. 27; see Pl.'s Resp. Ex. I, at 3, Docket No. 33-7.)

Shortly after being passed over for the supervisory position, Shaw was selected for promotion to a "Lead" role in the "bedboard" process, in which Shaw cleaned patient rooms after patients were discharged. (Talley Decl. ¶ 5, Docket No.

---

[2] There is some discrepancy in the record as to when Jones was actually selected for this supervisory position. Shaw points to a letter sent by Bryant to an EEOC Investigator in response to an EEOC Request for Information, dated April 8, 2011 (which in turn was sent by the EEOC to Aramark in response to the filing of an EEOC Charge of Discrimination by Shaw, described below), which contains a table listing the positions for which Shaw had applied with Aramark from April 2008, to the date of the response, and the individuals who filled those positions. (Pl.'s Resp. Ex. I, Docket No. 33-7.) The table lists Jones as the person who filled the supervisory position, but lists his hire date as May 2009. (Id.) Jones's interview score sheet, however, is dated June 24, 2009, a full month after Jones's supposed hire date. Notwithstanding this discrepancy, there is no dispute that Jones was a supervisor by the time of the November 8, 2009 incident between him and Shaw. (See Shaw Dep. 54:17-55:9, Docket No. 34-2.) And although Shaw argues that it was Emmanuel Williams, who was in his early twenties at the time, and not Jones, who was given the supervisory position for which Shaw applied, (Pl.'s Resp. 11, Docket No. 33), Aramark has presented evidence that Emmanuel Williams was not promoted to a supervisory position until January 2010, and Shaw, as will be described in more detail below, points to no record evidence to refute that showing.

3

27-1.) The promotion included a pay raise of $1 per hour. (Id.) Although Shaw had specific job responsibilities, his day-to-day duties were somewhat fluid throughout his employment with Aramark, based on Aramark's needs during a given shift and based on who was working as the third shift supervisor that evening. (See Shaw Dep. 25:18-26:21, Docket No. 34-2.)

While the specifics are not entirely clear, it is clear that Shaw was involved in a confrontation with Jones on or about November 8, 2009. (Compl. ¶ 10; Shaw Dep. 54:20-61:9.) Shaw was suspended on November 8, and was terminated from his position on November 12, 2009, purportedly for "insubordination and unprofessionalism." Shaw refused to sign a termination notice listing this reason. (Compl. ¶ 12.) Thereafter, Shaw sent a letter to Lee Hyde ("Hyde"), Aramark's Director of Environmental Services at VCUHS, alleging that his firing was, among other things, because of his age. (Compl. ¶ 13.) On November 24, 2009, Shaw filed a Charge of Discrimination with the EEOC, alleging that he had been denied promotions, suspended, and discharged because of his age. (Compl. Ex. J.)

Soon after receiving Shaw's letter, Hyde asked Gregory Talley ("Talley"), Aramark's Human Resources Manager at VCUHS, to investigate the incident that led to Shaw's termination. (Lee Hyde Decl. ¶ 6, Docket No. 27-6.) After reviewing Shaw's personnel file and speaking with Birth, Lewis, and Jones, Hyde

4

and Talley concluded Shaw had acted unprofessionally toward Jones, but that they should offer to reinstate Shaw with back pay. (Id. ¶ 7.) Hyde, Talley, and Birth held a meeting with Shaw on December 8, 2009, during which they informed him of their conclusion and offered to reinstate him, with the understanding that he would continue to have a disciplinary record because of the incident. (Compl. ¶¶ 15-16; Talley Decl. ¶ 14, Docket No. 27-1.) Shaw was reinstated and reported to work the same day. Shaw did not, however, receive a Christmas bonus for 2009. (Compl. ¶¶ 16-17, 20.)

Since Shaw's return, he has maintained his position as Lead, although he was assigned to perform work in the central sterilization or pharmacy area, and most recently as a stair tech, rather than in the bedboard process. (Compl. ¶ 17; Shaw Dep. 25:18-26:16.) Within a few months after Shaw's return, however, Hyde, along with Terry Williams, Assistant Director of Environmental Services, decided that employees would no longer be given the "Lead" designation. (Hyde Decl. ¶ 9, Docket No. 27-6.) Although employees who were already designated "Leads" would keep that designation, and would continue to receive the extra $1 per hour pay increase relative to non-Leads, they would "work as regular front line employees and were not to be responsible for any supervisory type of responsibilities." (Id.)

5

## DISCUSSION

### I. Standard Of Review

Pursuant to Fed. R. Civ. P. 56(c), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the non-moving party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

While the evidence presented must always be taken in the light most favorable to the non-moving party, see Smith v. Va. Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996), a party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Rather, once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing a genuine dispute exists. See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 US. 574, 586-87 (1986). Thus, to survive a motion for summary judgment, "the nonmoving party must go beyond the pleadings and, by citing affidavits or 'depositions, answers to interrogatories, and admissions on file,' designate 'specific

6

facts showing that there is a genuine issue for trial.'" McCoy v. Robinson, No. 3:08cv555, 2011 WL 5975277, at *1 (E.D. Va. Nov. 28, 2011) (quoting Celotex, 477 U.S. at 324) (internal quotation marks). Where the non-moving party fails to do so, the court may "consider the fact [as presented by the moving party] undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting material—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3).

## II. Claims Based On Acts Alleged To Have Occurred Before January 28, 2009

Aramark contends that the claims detailed in Count I are time-barred because Shaw's EEOC charge was untimely filed. (Def.'s Mot. 10, Docket No. 27.) All of the events in Count I are alleged to have occurred before January 28, 2009. Because these events occurred outside the statutory window for claims that can be considered upon the filing of an EEOC charge, Aramark's motion for summary judgment with respect to Count I will be granted.

The ADEA requires a plaintiff to file an EEOC complaint "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(B). Thus, the Court must determine which of Shaw's allegations occurred within the statutory window in order to determine over which claims it has jurisdiction. The

Supreme Court addressed that issue in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), and the Court's discussion in that case is instructive here.[3]

In Morgan, the plaintiff filed an action under Title VII alleging that he had been subjected to consistent disparate treatment based on his race and to a hostile work environment. Morgan, 536 U.S. at 104. The Supreme Court was faced with the question of "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside [the] statutory time period [for filing a complaint with the EEOC]." Id. at 105. Observing that the charge filing provision of Title VII, 42 U.S.C. § 2000e-5(e)(1) "specifies with precision" the procedural requirements for filing a Title VII claim, the Court determined that the critical questions were "What constitutes an 'unlawful employment practice' and when has that practice 'occurred.'" Morgan, 536 U.S. at 109-10.

In answering those questions, the Court made a distinction between discrete discriminatory acts and hostile work environments. Each discrete discriminatory act is considered an "unlawful employment practice," occurring "on the day that it

---

[3] While Morgan deals with employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the Fourth Circuit, as well as other courts, has recognized that the standards for evaluating unlawfully discriminatory practices under both Title VII and the ADEA are, for purposes relevant here, identical. See, e.g., Baqir v. Principi, 434 F.3d 733, 745-46 & n.14 (4th Cir. 2006).

'happened,'" with the result that a party is required to file a charge with the EEOC within "300 days of the date of the act or lose the ability to recover for it." Id. at 110. Discrete acts include such things as "termination, failure to promote, denial of transfer, or refusal to hire," and "are easy to identify." Id. at 114. Although acts falling outside the statutory window can be used as relevant background evidence, the emphasis "'should not be placed on mere continuity' but on 'whether any present violation exist[ed].'" Id. at 112 (alteration in original) (quoting United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)).

Hostile work environment claims, however, are of a different character. In contrast to discrete acts, "their very nature involves repeated conduct." Id. at 115 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-49 (3d ed. 1996)). Single acts of harassment may not, in themselves, be actionable, and it is the cumulative effects of the harassing acts that creates the harm. Id. Thus, the creation of a hostile work environment constitutes a single "unlawful employment practice," and the law requires only that an EEOC charge be filed within 300 days of some related act constituting the practice to make the entire practice actionable. Id. at 117.

9

Applying these principles here, it becomes clear Shaw's hostile work environment claim in Count I is time-barred. In Count I, Shaw makes numerous factual allegations concerning Aramark's creation of a hostile work environment. (Compl. ¶ 7(a)-(d)[4].) Assuming, arguendo, that these facts are sufficient to establish a prima facie claim of a hostile work environment, the last of the complained of acts occurred no later than September 10, 2008, more than a year before Shaw's filing of an EEOC charge in November 2009.[5] Thus, the EEOC charge was clearly filed after the 300-day statutory period for filing had expired.

Shaw makes two arguments that the Court has jurisdiction to hear this claim, but both fail. First, Shaw argues "the charges reflect a pattern of desperate [sic] impact that is manifested in ongoing discrimination," and that, therefore, all "intrinsically connected" discriminatory activities should be related. (Pl.'s Resp. 4, Docket No. 33). As discussed

---

[4] The Complaint contains two paragraphs labeled 7(d); this reference is to the second of those.

[5] Although Shaw's EEOC charge lists November 12, 2009, as the last date on which a discriminatory act occurred, Shaw's Complaint in this action contains no factual allegations that a discriminatory act related to his hostile work environment claim occurred after September 10, 2008. (Compl. ¶ 12; Compl. Ex. J, Docket No. 3-8.) Additionally, Shaw's EEOC charge does not indicate the discriminatory acts that he thought constituted a "continuing action," and further only alleges that he was "denied promotions, suspended and discharged" unlawfully, and not that he was subjected to a hostile work environment. (Compl. Ex. J, Docket No. 3-8). The EEOC charge, therefore, provides no additional predicate for a hostile workplace.

10

previously, however, the Supreme Court has held that distinct unlawful discriminatory practices each start their own statutory clock, and that, while the creation of a hostile work environment constitutes a single unlawful discriminatory practice, it cannot be combined with other distinct unlawful discriminatory practices (such as a claim of disparate treatment) for the purposes of bringing a practice that occurs outside of the statutory window under a court's jurisdiction. Morgan, 536 U.S. at 112. Shaw's argument concerning the connectedness of the claims, therefore, fails as a matter of law.

Shaw also argues that the EEOC has stated that "In harassment cases, you must file your charge within 180 or 300 days of the last incident of harassment, although we will look at all incidents of harassment when investigating your charge, even if the earlier incidents happened more than 180/300 days earlier," e.g., Timeliness, U.S. Equal Emp. Opportunity Commission, http://www.eeoc.gov/employees/timeliness.cfm (last visited Oct. 11, 2012), and that this statement evidences an intent to make these claims actionable. (Pl.'s Resp. 4, Docket No. 33.) But while the EEOC is authorized to look at incidents of harassment occurring outside the statutory window, they are only authorized to do so when at least one of the acts constituting the harassment claim occurs during the window, and

11

Shaw fails to make such an allegation. Because Shaw's hostile work environment claim is based on alleged incidents that, if true, all occurred outside the statutory window, Aramark's motion for summary judgment of this claim will be granted.

**III. Claims Based On Alleged Conduct Occurring On Or After January 28, 2009, And On Or Before November 24, 2009**

In Count II, Shaw alleges three categories of disparate treatment that he says occurred during the statutory window: (i) his non-selection for a third-shift supervisory position for which he interviewed on April 15, 2009; (ii) his non-selection for four other supervisory positions for which he applied throughout 2009; and (iii) his suspension on November 8, 2009, and termination on November 12, 2009. Aramark claims that, because Shaw cannot establish that his age was the "but-for" cause of any allegedly disparate treatment he received during the statutory window, it is entitled to summary judgment. Shaw has presented no direct evidence that age was the "but-for" cause of any of these alleged actions.

When only circumstantial evidence of discriminatory motive is presented, courts analyze the evidence using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (assuming McDonnell Douglas framework applies to ADEA claims). Under this framework

12

a plaintiff must show that: "(1) [he] is a member of a protected class; (2) [he] suffered adverse employment action; (3) [he] was performing h[is] job duties at a level that met h[is] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). The first element is clearly met. Nevertheless, because Shaw has failed to meet his burden related to at least one other element for all three of these claims, Aramark's motion for summary judgment as related to Count II will be granted.

First, Shaw argues that his non-selection for the supervisory position for which he interviewed was unlawfully motivated by his age. Record evidence shows that, in addition to the first element, Shaw's claim satisfies both the second element, in that he was not selected for a promotion (Talley Decl. ¶ 4, Docket No. 27-1), and arguably the third element, in that, while he was not promoted to the supervisory position he had applied for, he was shortly thereafter promoted to his Lead position, (see Talley Decl. ¶ 5, Docket No. 27-1), allowing at least the inference that he was performing to his employer's expectations.

13

Shaw has not, however, satisfied the fourth McDonnell Douglas element. Aramark has presented evidence that Jones, who was fifty years of age (or approximately nine years younger than Shaw) at the time, was selected for the position over Shaw. (Talley Decl. ¶ 4, Docket No. 27-1.) While Shaw argues that it was Emmanuel Williams, and not Jones, who was selected for the third-shift supervisor position (see, e.g., Pl.'s Resp. 8, Docket No. 33), he points to no record evidence to support that contention.[6] Shaw, in fact, testified that he did not know with whom he was competing for the third-shift supervisor positions. (Shaw Dep. 110:13-15, Docket No. 34-2.)

Next, Shaw alleges that his non-selection for four other supervisory positions constituted unlawful age discrimination.

---

[6] Shaw attempts to introduce the affidavit of Debbie Evans ("Evans"), one of his former supervisors, in support of his claim. (See Evans Aff. para. 3, Docket No. 33-1.) Aramark, however, objects to the consideration of this affidavit on the grounds that Evans fails to establish she has sufficient personal knowledge to testify concerning who was hired to fill the third-shift supervisor position. (See Def.'s Reply 4, Docket No. 34.) See also Fed. R. Civ. P. 56(c)(4) (requiring that, to be admissible, affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.") While Evans states in her affidavit that she was Shaw's supervisor and that she "served internally, during [the relevant] time, alongside of other Supervisors and Management who were in charge with directing and overseeing employees," (Evans Aff. para. 2, Docket No. 33-1), she has not sufficiently demonstrated knowledge of Aramark's personnel decisions regarding Shaw, or any other Aramark employee, to demonstrate that her affidavit can be considered on this key issue.

14

Shaw, however, has again failed to satisfy the fourth element of the McDonnell Douglas burden-shifting test by failing to submit any evidence concerning whether these positions remained open or, if filled, by whom they were filled. In contrast, Aramark has submitted evidence that the solicitation for all four of those positions were canceled without having been filled. (See Def.'s First Req. for Admiss. Exs. C-F, Docket No. 27-7.) Shaw, therefore, has failed to establish a prima facie case of unlawful age discrimination on this aspect of Count II.

Finally, Shaw claims that he was discriminated against based on his suspension and brief termination in November 2009. While suspension and termination are clearly adverse employment actions, Shaw has failed to cite any evidence which would satisfy either the third or fourth facets of the McDonnell Douglas analysis. The third element requires that a plaintiff show that he was performing to his employer's expectations. Aramark has presented unrebutted evidence, however, that the suspension and termination were related to an altercation between Shaw and Jones. (Arrington Jones Decl. ¶¶ 4-7, Docket No. 27-5; see also, Talley Decl. ¶¶ 7-12, Ex. D, Docket No. 27-1.) While Shaw argues that the allegations about the confrontation are untrue (Pl.'s Resp. 12, Docket No. 33), he has cited no evidence that supports this aspect of Count II, and thus Aramark's evidence is uncontradicted. The fourth element

15

requires Shaw to show that his position was filled by someone outside the protected class, but Shaw himself was reinstated to the position, at the same pay grade and title, shortly after the termination. While Shaw argues that Kera Lewis, who was substantially younger than he, replaced him as Lead upon his return, he has presented no evidence to substantiate that assertion, while Aramark has presented proof that she did not become a Lead until February 6, 2010, nearly two months after Shaw's reinstatement (Talley Decl. ¶ 19, Docket No. 27-1).

Because Shaw has failed to satisfy the McDonnell Douglas factors for any of the complained of actions occurring during the statutory window, he has failed to establish a prima facie case of unlawful age discrimination under the ADEA for disparate treatment. Accordingly, Aramark's motion for summary judgment must be granted as to Count II.

## IV. Claims Based On Alleged Actions Occurring After November 24, 2009

Aramark claims that the Court lacks jurisdiction over any of Shaw's claims that are based on conduct occurring after the date on which he filed his EEOC charge because he has failed to exhaust his administrative remedies as to any such conduct. (Def.'s Mem. 15, Docket No. 27.) Count III alleges that Aramark: (i) denied Shaw a Christmas bonus in 2009, (ii) failed to reinstate him to his position upon return from his brief

16

termination, and (iii) failed to consider him for numerous supervisory positions for which he applied, all in retaliation for his filing an EEOC charge. (Compl. ¶¶ 20-32.) Because these claims relate back to Shaw's EEOC charge, the Court finds that Shaw is not barred from bringing them. Nevertheless, because Shaw fails to cite to any record evidence refuting Aramark's evidence that demonstrates non-discriminatory reasons for the employment decisions at issue, Aramark's motion for summary judgment will be granted.

As noted earlier, a plaintiff is required to file an EEOC charge before proceeding with a civil action against an employer for a violation of the ADEA. 29 U.S.C. § 626(d)(1). It is well-established, however, that a Title VII suit may include a claim that relates back to a previously filed EEOC charge, see Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992), and Aramark concedes that the principle also applies to ADEA claims.[7] (See

---

[7] Aramark cites to Nealon for the proposition that the relation-back principle is "well-established." However, this case was decided in 1992, before the Supreme Court's Morgan decision in 2002. In 2003, the Tenth Circuit interpreted Morgan to reject any sort of "continuing violation" or relation-back claims, even those based on retaliation, in all but hostile work environment claims, noting:

> [T]he Supreme Court's recent pronouncement in [Morgan], has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII [and ADEA] actions. We agree with the [United States Postal Service] that such unexhausted claims involving discrete employment actions are no

17

Def.'s Mem. 15, Docket No. 27.) In order for a claim to relate
back to an EEOC charge so that it can be raised for the first
time in a district court, the discrimination must be "like or
related to" the allegations contained in the EEOC charge and
must "grow out of" such allegations during the pendency of the

longer viable. Morgan abrogates the continuing
violation doctrine as previously applied to claims of
discriminatory or retaliatory actions by employers,
and replaces it with the teaching that each discrete
incident of such treatment constitutes its own
"unlawful employment practice" for which
administrative remedies must be exhausted. Id. at
110-13. "Discrete acts such as termination, failure
to promote, denial of transfer, or refusal to hire are
easy to identify. Each incident of discrimination and
each retaliatory adverse employment decision
constitutes a separate actionable 'unlawful employment
practice.'" Id. at 114. In Morgan, this rule applied
to bar a plaintiff from suing on claims for which no
administrative remedy had been sought, when those
incidents occurred more than 300 days prior to the
filing of plaintiff's EEO complaint. The rule is
equally applicable, however, to discrete claims based
on incidents occurring after the filing of Plaintiff's
EEO complaint. As the Court stated "[t]he existence
of past acts . . . does not bar employees from filing
charges about related discrete acts so long as the
acts are independently discriminatory and charges
addressing those acts are themselves timely filed."
Id. at 113.

Martinez v. Potter, 347 F.3d 1208, 1210-11 (3rd Cir. 2003)
(final two alterations in original). There seems to be no post-
Morgan decisions on this issue in the Fourth Circuit, nor have
the parties in this case claimed that the relation-back
principle has been abrogated by Morgan. Because Aramark has not
argued that the Court should adopt the Martinez holding, and
because Nealon seems to be the law of the circuit, the Court
will apply Nealon even though Martinez is a persuasive argument
for applying Morgan. That decision, however, is not properly
made here.

18

case before the EEOC. Brown v. Runyon, No. 96-2230, 1998 U.S. App. LEXIS 3237, at *9-10 (4th Cir. Feb. 27, 1998) (quoting Nealon, 958 F.2d at 590). If either of these predicate conditions is absent, his claims must be dismissed for failure to exhaust administrative remedies. Brown, 1998 U.S. App. LEXIS 3237, at *10.

In Nealon, the Fourth Circuit noted that charges of retaliation almost always relate back to the original EEOC charge, stating this principle "is the inevitable corollary of our 'generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.'" Nealon, 958 F.2d at 590 (quoting Hill v. W. Electric Co., 672 F.2d 381, 390 n.6 (4th Cir. 1982)) (internal quotation marks omitted). Here, Shaw alleges that he was retaliated against in various ways because he filed an EEOC charge, and the alleged actions occurred after he filed the EEOC charge on November 24, 2009, but before the charge was resolved by the EEOC on April 29, 2011. Under Nealon, these charges of retaliation are both "like or related to" Shaw's pre-filing disparate treatment claims and "grow out of" those claims "during the pendency of the case before the Commission." Thus, the relation-back principle applies.

19

Nevertheless, Shaw has failed to present sufficient evidence to establish a prima facie case of retaliation. To establish such a case, a plaintiff must show that: (i) he engaged in protected activity, (ii) his employer took adverse employment action against him, and (iii) a sufficient causal connection existed between his protected activity and his employer's adverse employment action to show a causal nexus between the two events. See 29 U.S.C. § 623(d); see also Hopkins v. Balt. Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) (detailing requirements for retaliation claim in Title VII case). While Shaw clearly engaged in a protected activity (i.e., filing an EEOC charge), he has failed to demonstrate that Aramark took adverse employment action against him, and he has failed to demonstrate the required nexus between the protected activity and the adverse employment action, and therefore his claim fails.

Shaw first alleges that the failure to pay him a Christmas bonus in 2009 was retaliatory. (Compl. ¶ 20.) Talley, who was responsible for human resources support for Aramark at the VCUHS worksite at the time Shaw did not receive his bonus, submitted an affidavit averring that this decision was made "based upon the practice of VCUHS (from which the funds come for such bonuses), . . . because he had a disciplinary record at that point in time." (Talley Decl. ¶¶ 9, 15, Docket No. 27-1.) Shaw

20

has failed to present any evidence that refutes Talley's evidence; and it, therefore, will be taken as true. Thus, although Shaw may have suffered an adverse employment action, there is no evidence that such action was linked to his filing of an EEOC charge.

Nor has Shaw supported the allegation that his non-selection for various supervisory positions was actionable. While Shaw has submitted evidence that he applied for supervisory positions after November 24, 2009, some of which were available at his job site,[8] (e.g., Compl. Ex. B, at 6 ("3rd Shift Operations Manager - Healthcare - Richmond, VA," job number 59362, posted on Nov. 19, 2010)), and that he was not selected for those position, he has failed to make a prima facie case that such decisions qualified as actionable adverse employment actions. To establish a prima facie case for failure to promote, a plaintiff must show (i) he applied for and was qualified for a promotion to a position to which promotions were being offered, (ii) that despite his qualifications, he was rejected, and (iii) after his rejection, the position remained

---

[8] Shaw explicitly stated that his claims of discriminatory treatment were limited to his non-selection for supervisory positions at his worksite. (Shaw Dep. 145:12-146:9, Docket No. 34-2.) Thus, while Shaw has presented evidence concerning applying for a number of Aramark positions based outside VCUHS (see Compl. Ex. B), those applications are irrelevant here.

21

available to others of his qualifications.[9] McNairn v. Sullivan, 929 F.2d 974, 977 n.6 (4th Cir. 1991)(citing Wright v. Nat'l Archives & Records Serv., 609 F.2d 702, 714 (4th Cir. 1979)). Shaw has presented no evidence about the qualifications for the positions for which he was not selected, nor has he shown that those positions were filled by anyone, much less by someone of the same qualifications.

Finally, Shaw has failed to cite to evidence showing that Aramark's proffered nondiscriminatory reasons for altering his responsibilities, including by assigning him to a Stair Tech position, were pretextual. Assuming, without deciding, that Shaw has stated a prima facie case that such actions constituted an adverse employment action, Aramark has presented evidence that the decisions were not based on Shaw's age, but instead were based on a policy decision to reduce the responsibilities of all Lead employees, and that, in any event, Shaw's responsibilities were fluid and constantly changing throughout his employment. (See Hyde Decl. ¶ 9, Docket No. 27-6; see also Shaw Dep. 20:5-21:8, 25:18-26:20, 60:11-61:6, Docket No. 34-2.) Shaw has not cited to any record evidence to show that Aramark's

---

[9] While the test set out in McNairn also requires a showing that the employee was a member of a protected class, such a showing is not a requirement of a retaliation claim; the plaintiff need only show he engaged in a protected activity. See Hopkins, 77 F.3d at 754.

22

explanation, which is supported by record evidence, is merely pretext for discriminatory or retaliatory actions.

Because Shaw has not cited to any record evidence supporting his claims, he has failed to establish a prima facie case for retaliation based on his filing of an EEOC charge. Accordingly, Aramark's motion for summary judgment must be granted as it relates to Count III.

## CONCLUSION

For the foregoing reasons, the MOTION FOR SUMMARY JUDGMENT (Docket No. 26) will be granted.

It is so ORDERED.

/s/ $REP$

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October _19_, 2012